**R.W. COLBY, as guardian and next friend of Dean L. Colby, an incapacitated adult, Plaintiff–Appellee,**

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY, Defendant–Appellant.**

**No. 93CA2126.**

Colorado Court of Appeals, Div. V.

June 15, 1995.

Rehearing Denied July 20, 1995.

Certiorari Granted Jan. 8, 1996.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for plaintiff-appellee.

Anderson, Campbell and Laugesen, P.C., Richard W. Laugesen, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Progressive Casualty Insurance Co., appeals from a summary judgment determining that plaintiff, R.W. Colby, as guardian for Dean L. Colby, an incapacitated adult, was entitled to recover additional rehabilitation benefits for his ward. We reverse.

Dean Colby suffered serious injuries in a rollover automobile accident in 1993 as a passenger in a vehicle insured by defendant. Defendant paid the policy limits for all of the statutorily mandated personal injury protection coverages including $50,000 for rehabilitation benefits.

Plaintiff brought a declaratory judgment action seeking a determination that defendant's policy failed to comply with the version of § 10–4–706(1)(c)(II), C.R.S. (1987 Repl.Vol. 4A) of the No–Fault Act then in effect. Specifically, plaintiff asserted that the statute required payment of additional rehabilitation benefits under the policy if evidence established that $50,000 was inadequate.

The parties filed cross-motions for summary judgment. The trial court interpreted § 10–4–706(1)(c)(II), C.R.S. (1987 Repl.Vol. 4A) as imposing no absolute time or dollar limitation on rehabilitation benefits. Based upon the declared purpose of the Act to compensate fully victims of automobile accidents, the court viewed this construction of the statute as consistent with the provisions of § 10–4–710, C.R.S. (1987 Repl.Vol. 4A), which authorized an insurance carrier the option of providing additional coverage in No–Fault policies.

As pertinent here, § 10–4–706 previously provided:

(1) Subject to the limitations and exclusions authorized by this part 7, the *minimum coverages required* for compliance with this part 7 are as follows:

. . . .

(c)(I)(A) Compensation without regard to fault for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle. . . .

. . . .

(II) An insurer obligated to provide direct benefits under this section *shall be presumed to have complied* with the provision for rehabilitation when the value of rehabilitation services or treatment provided under paragraph (c) of subsection (1) of this section shall have reached fifty thousand dollars within five years after an accident involving a motor vehicle.

(emphasis added).

With reference to additional coverage, § 10–4–710 provided:

(1) Nothing in this Part 7 shall be construed to prohibit the issuance of policies providing coverages more extensive than the minimum coverages required under this part 7. . . .

. . . .

(2)(a) Every insurer shall *offer* for inclusion in a complying policy, in addition to the coverages described in section 10–4–706, *at the option of the named insured:* [additional benefits]

. . . .

(II)(b) A complying policy may provide that all benefits set forth in section 10–4–706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of one hundred thousand dollars payable on account of injury to or death of any one person as a

result of any one accident arising out of the use or operation of a motor vehicle. (emphasis added).

■ Defendant contends that the trial court erred in its interpretation of the quoted statutes. Specifically, defendant contends that if, as here, $50,000 in rehabilitation expenses has been paid, the policy in question complies with the minimum required coverage under the No–Fault Act and that plaintiff may not seek additional benefits. We agree.

We recognize, as plaintiff contends, that the two statutes may be read as authorizing payment of rehabilitation expenses in excess of $50,000 so long as all benefits under the policy do not exceed the $100,000 maximum contained in § 10–4–710. The statutes may also be read, on the other hand, as addressing the minimum coverage for a complying policy under § 10–4–706 and additional coverages under § 10–4–710 which must be offered if the insured is willing to pay *additional* premiums.

Resolution of the issue before us therefore necessarily depends upon the intent of the General Assembly in adopting the presumption in § 10–4–706(1)(c)(II). Specifically, the issue is whether the presumption applies to dollars, years, or both. We conclude that the presumption applies to years only.

■ In resolving the issue before us, we must give effect to the intent of the General Assembly. If the meaning of the statutes is unclear as in this case, we may resort to other aids in statutory construction including legislative history. *Krieg v. Prudential Property & Casualty Insurance Co.*, 686 P.2d 1331 (Colo.1984); *see also City of Aspen v. Meserole*, 803 P.2d 950 (Colo.1990).

The No–Fault Act was first adopted by the 49th General Assembly in 1973. Prior to its adoption and pursuant to Senate Joint Resolution No. 7, a report by a committee of legislators was prepared and presented on behalf of the legislative council to the General Assembly. *See* Colorado Legislative Council, Research Publ. # 190, *Committee on Automobile Insurance* (1972).

The committee's report consisted of a narrative discussion addressing the concerns relative to automobile insurance and tort recovery in this state and the impact upon the motoring public. A minority report also addresses these issues. The majority report, however, also included a proposed No–Fault Act.

This proposed act contained language substantially in the form of the 1973 statute relative to recovery of rehabilitation expenses. It also contained a provision similar to the above-quoted § 10–4–710, except that no dollar limit was included in that version relative to the coverage that may be afforded in an automobile policy.

In different locations in the majority report, the authors indicate that under the proposed act:

> *Rehabilitation Coverage.* The injured person would receive compensation *up to* $25,000 [now $50,000] for rehabilitation procedures, or treatment and occupational training provided within five years after the injury. . . .

Colorado Legislative Council, Research Publ. # 190, *supra,* at 7 & 23–24 (emphasis added).

Following adoption of the No–Fault Act, we note that, in at least three decisions, our supreme court has indicated in dictum that § 10–4–706 imposes a cap on payment of rehabilitation expenses. *See Sulzer v. Mid–Century Insurance Co.*, 794 P.2d 1006, 1009 (Colo.1990) ("This [rehabilitation] benefit is available for a period of five years after the accident and is limited to a total of $50,000."); *Krieg v. Prudential Property & Casualty Insurance Co., supra,* at 1333 (1973 version of § 10–4–706 requires the insurance policy to provide a minimum of "compensation up to $25,000 for rehabilitative care and treatment rendered within five years after the accident"); *see also Cingoranelli v. St. Paul Fire & Marine Insurance Co.*, 658 P.2d 863 (Colo. 1983) (fn. 5).

Further, in the declaration made in connection with a 1994 amendment to the No–Fault Act, the General Assembly stated:

> [T]he original intention of the Colorado general assembly in enacting the 'Colorado Auto Accident Reparations Act' . . . was to limit required rehabilitation benefits in

both time and amount.... [S]uch intention is evidenced by the report of the special interim committee on automobile insurance created by the legislative council in 1972.... [And] in light of a recent court opinion in which an attempt by an insurer to limit payment for rehabilitation treatment and occupational training to the five-year-period after the accident was declared void by the court, the purpose of this act is to clarify the original legislative intent of the 'Colorado Auto Accident Reparations Act.'

Colo.Sess.Laws 1994, ch. 187, at 1066.

While this declaration of intent was made some 21 years after the adoption of the original statute, it is instructive. *See People v. Holland,* 708 P.2d 119 (Colo.1985); *Catholic Media Groups, Inc. v. Meyer,* 879 P.2d 480 (Colo.App.1994).

Further, in 1994, the General Assembly repealed the former provision quoted above in its entirety, and amended the statute to provide that minimum coverage now extends to:

> Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Section 10–4–706(1)(c)(I), C.R.S. (1994 Repl. Vol. 4A).

■ As a result, we conclude that, in the context of this case, defendant's policy satisfied the rehabilitation benefits requirement in § 10–4–706(1)(c)(II) because it obligated defendant to pay up to $50,000 and that amount has been paid. In our view, the presumption in § 10–4–706(1)(c)(II) applies to years only so that an insurer may be required to pay additional benefits if less than $50,000 has been paid within five years.

■ We further conclude that § 10–4–710 does not apply in resolving the issue before us because that section addresses additional coverage which must be offered in exchange for additional premiums. *See Brown v. American Family Mutual Insurance Co.,*

809 P.2d 1055 (Colo.App.1990) (§ 10–4–710 was not intended to affect the amounts payable under § 10–4–706(1)(b) to (1)(e)).

On this basis, we conclude that the two statutes are reconcilable and consistent with the overall legislative scheme.

■ Finally, and contrary to plaintiff's contention, we do not view the result that we reach here as inconsistent with the general purpose of the No–Fault Act to avoid payment of inadequate compensation to victims of automobile accidents. Section 10–4–702, C.R.S. (1994 Repl.Vol. 4A); *see Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra.*

That goal must be considered in the context of all victims and the objective of providing compensation without regard to fault in the underlying accident. *See* Colorado Legislative Council, Research Publ. # 190, *supra,* at 6. Conversely, the construction of the statute urged by plaintiff would afford the same coverage under the minimum requirements for rehabilitation benefits imposed by § 10–4–706(1)(c)(II) as that authorized for additional premiums under § 10–4–710.

The judgment is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.

ROTHENBERG and ROY, JJ., concur.